# In the United States Court of Federal Claims

No. 16-141 C
(Filed: August 10, 2021)

```
* * * * * * * * * * * * * * * * *   *
                                    *
JOSEPH D. REAVES,                   *
                                    *
                  Plaintiff,        *
                                    *
          v.                        *
                                    *
THE UNITED STATES,                  *
                                    *
                  Defendant.        *
                                    *
* * * * * * * * * * * * * * * * *   *
```

*Joseph D. Reaves*, *pro se*, of Philadelphia, PA.

*Mariana Teresa Acevedo*, Trial Attorney, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

**SOMERS**, Judge.

  *Pro se* Plaintiff, Joseph Reaves, filed a complaint in this Court challenging the denial by the Army Board for Correction of Military Records ("ABCMR") of his application to correct his military record. Plaintiff requested that the ABCMR correct his record to reflect that he was discharged due to physical disability rather than as a result of his voluntary resignation for the "good of the service." The government has moved to dismiss Plaintiff's complaint as time-barred or, alternatively, for judgment on the administrative record. The case has been fully briefed and the judge originally assigned to this case held oral argument on the government's motions on March 1, 2017. The Court finds re-argument unnecessary. For the reasons explained below, the Court lacks subject matter jurisdiction over Plaintiff's complaint.

## BACKGROUND

**A. Factual History**

  Plaintiff claims he is owed military disability pay under 10 U.S.C. § 1201. Plaintiff enlisted for active duty in the United States Army on October 6, 1981. Administrative Record ("AR") 532, 609. On March 5, 1983, while on active duty, Plaintiff was diagnosed with a duodenal ulcer. AR 414. Despite the diagnosis, Plaintiff continued on active duty and reenlisted in the Army on September 20, 1984. AR 532, 594, 596. Plaintiff was later diagnosed with a pre-

1

pyloric peptic ulcer on August 4, 1986.  AR 206-207.  On June 5, 1986, Plaintiff accepted nonjudicial punishment for using marijuana between March and April of 1986, requiring he pay $200.00 per month for two months, perform 45 days of extra duty, and accept a grade level reduction from private first class to private.  AR 347, 384.  At some point between April and November of 1986, Plaintiff faced more legal issues with the Army, resulting in the initiation of court-martial proceedings.  ECF No. 12 at 4 n. 4 ("Gov't's Mot. to Dismiss").  Although certain records and information are unavailable regarding the court martial that he was facing,[1] it is clear that Plaintiff submitted a request for discharge for the good of the service.  AR 529.  Because Plaintiff was resigning for the good of the service, the Army regulation governing enlisted personnel separations in effect at the time, Army Regulation 635-200, afforded Plaintiff a military attorney who was required to apprise Plaintiff of the potential adverse consequences of making such a request, including being discharged "under conditions other than honorable" and thereby waiving a medical discharge claim.  Army Reg. 635-200, chapter 10-2 (July 20, 1984); *see also* Gov't's Mot. to Dismiss at 4-5.  On November 10, 1986, Plaintiff was discharged from the Army for the good of the service under conditions other than honorable.  AR 529.

**B.  Procedural History**

In May 2009, Plaintiff submitted an application to the ABCMR to request that his good of the service discharge be changed to a physical disability discharge.  AR 390.  On February 17, 2010, the ABCMR notified Plaintiff that it was denying his claim.  AR 343.  The ABCMR opinion, dated February 4, 2010, found no evidence to suggest Plaintiff should have been medically discharged.  AR 345-352 ("On the contrary, the evidence of record shows that after exhaustive medical tests, examinations, and treatment [Plaintiff] was cleared for continued service.").  Moreover, the ABCMR did not find any basis for Plaintiff's claim that his medical records should have been reviewed by the Medical Evaluation Board ("MEB") or referred to the Physical Evaluation Board ("PEB").  *Id*.  In addition, the ABCMR found there was no evidence to suggest Plaintiff "was not properly and equitably discharged in accordance with the regulations in effect at the time."  *Id.*

On November 13, 2010, Plaintiff submitted a request for reconsideration of the ABCMR's February 2010 decision.  AR 83-340.  In an opinion dated June 2, 2011, the ABCMR once again denied Plaintiff's request to correct his military record to reflect a disability separation.  AR 36.  The ABCMR found that although his medical condition could potentially have been reviewed by the MEB, "his discharge was not the result of his inability to serve" in the Army.  *Id*.  Moreover, the ABCMR stated that discharges like Plaintiff's under "Army Regulation 635-200 take precedence over medical separation processing . . . ."  *Id*.

After the ABCMR denied Plaintiff's correction request for a second time, he filed suit in this Court, on January 29, 2016, requesting review of the ABCMR's decisions.  ECF No. 1 ("Compl.").  The government moved to dismiss Plaintiff's complaint contending that because Plaintiff was aware of his medical condition at the time of his discharge, the six-year statute of limitations began to run at the time of his discharge in 1986, not when the ABCMR denied his

---

[1] The government stated to the Court that certain records related to Plaintiff's court-martial proceedings are unavailable, including the court-martial charge sheet, Plaintiff's request for discharge in lieu of court-martial, and the discharge approval.  *See* Gov't's Mot. to Dismiss at 4 n. 4.

application for correction.  *See* Gov't's Mot. to Dismiss at 14-16.  Alternatively, the government moved for judgment on the administrative record arguing that the ABCMR's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  *Id*. at 16-20.

## DISCUSSION

### A.  Legal Standard

The United States Court of Federal Claims, like all federal courts, is a court of limited jurisdiction.  Under the Tucker Act, this Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  However, "[t]he Tucker Act does not, of itself, create a substantive right enforceable against the United States . . . ."  *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States,* 501 F.3d 1349, 1351 (Fed. Cir. 2007)).  Rather, to state a claim within this Court's jurisdiction, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States."  *Id*.  Stated differently, the plaintiff must state a claim that is based on a provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," *United States v. Mitchell*, 463 U.S. 206, 216-217 (1983) (citing *United States v. Testan*, 424 U.S. 392, 400 (1976)), and is "reasonably amenable to the reading that it mandates a right of recovery in damages," *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003).

In addition, once a plaintiff identifies a money-mandating source, the claim asserted by the plaintiff pursuant to that source must also have been brought within the applicable statute of limitations to be within the Court's jurisdiction.  *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008) (holding that the statute of limitations set forth in 28 U.S.C. § 2501 is jurisdictional).  The applicable statute of limitations in this case is 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501.

Although a *pro se* plaintiff is held to "less stringent standards than formal pleadings by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007).  Accordingly, a *pro se* plaintiff still "bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357*,* 1359 (Fed. Cir. 2002)).

**B. Analysis**

As explained below, this Court lacks jurisdiction over Plaintiff's complaint for two reasons.[2] First, Plaintiff's voluntary request to be discharged for the good of the service in lieu of facing a trial by court-martial, and his subsequent discharge, deprives this Court of jurisdiction over Plaintiff's complaint under *Sammt v. United States*, 780 F.2d 31 (Fed. Cir. 1985), and its progeny. Second, even if the *Sammt* jurisdictional bar did not exist, his complaint would nonetheless fall outside the Court's jurisdiction as it was filed roughly 30 years after his claims accrued and, therefore, is beyond the Tucker Act's six-year statute of limitations.

> 1. *Plaintiff's Voluntary Discharge for the "Good of the Service" Deprives this Court of Jurisdiction over His Claims*

Plaintiff served on active duty in the Army from October 6, 1981, until November 10, 1986, when his request for a voluntarily discharge under Army Regulation 635-200, chapter 10, for the good of the service in lieu of trial by court-martial was granted. AR 33, 529. In *Sammt*, the Federal Circuit articulated the rule that a voluntary discharge bars this Court from having jurisdiction over a military pay claim. 780 F.2d at 32-33 ("If his retirement was voluntary, no jurisdiction resides in the Claims Court."). This principle has been reaffirmed by the Federal Circuit in several cases since *Sammt*, including *Moyer v. United States*, 190 F.3d 1314 (Fed. Cir. 1999), which applied the *Sammt* rule to a case involving a former member of the Army's request to correct his military records to receive the pay and allowances he would have received had he been medically discharged instead of his requesting voluntary resignation to avoid a trial by court-martial. *See also Adkins v. United States*, 68 F.3d 1317, 1321 (Fed. Cir. 1995) ("If . . . Adkins's retirement was 'voluntary,' he retained no statutory entitlement to compensation, and thus no money-mandating provision would support Tucker Act jurisdiction over his claim.").

In *Moyer*, the Federal Circuit, explained that "once found to be voluntary, retirement or resignation generally eliminates the possibility of Tucker Act jurisdiction, thus depriving the Court of Federal Claims of authority to decide liability . . . ." *Moyer*, 190 F.3d at 1318. In other words, for the *Sammt* jurisdictional bar to apply, a court must find that the discharge was actually voluntary and not coerced or otherwise requested under duress. Moreover, the Federal Circuit has further explained that in addition to being truly voluntary, in order for this jurisdictional bar to apply, the benefit to which a plaintiff is claiming entitlement had to be a benefit for which the voluntary discharge ended the plaintiff's entitlement: "there is no jurisdictional bar if the claim

---

[2] In the government's motion to dismiss, it argued that Plaintiff's claim is barred by the applicable statute of limitations under the accrual rule set forth in *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990). While the government is correct in its argument for the reasons explained in subsection B.2., Plaintiff's claim is jurisdictionally barred for the additional reason explained in subsection B.1. As "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore . . . must raise and decide jurisdictional questions the parties either overlook or elect not to press," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2002), the Court addresses this additional jurisdictional defect with Plaintiff's complaint before turning to the government's argument under *Real*. *See also Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."); *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case.").

for benefits would survive whether the retirement was voluntary or involuntary . . . ." *McHenry v. United States*, 367 F.3d 1370, 1377 (Fed. Cir. 2004). Thus, if a benefit would continue to be available to a plaintiff irrespective of whether the discharge was voluntary or involuntary, then the *Sammt* bar does not apply. *Moyer*, 190 F.3d at 1319 ("[T]he claimant can hardly be said to have waived entitlement to the provision by voluntarily retiring or resigning if it applies irrespective of the manner in which the claimant leaves the service."). In short, for the *Sammt* bar to apply, the discharge from the service must have been voluntary, and, if found to be voluntary, the discharge must have ended a claimant's entitlement to the benefit in question. In the instant case, both requirements are met.

     A discharge for the good of the service is a type of voluntary separation. The Army regulation in effect at the time Plaintiff was discharged makes this clear. In general, the relevant regulation provided that "[a] soldier who has committed an offense or offenses, the punishment for which, under the UCMJ and the MCM, 1984, includes bad conduct or dishonorable discharge, *may submit a request* for discharge for good of the Service." Army Regulation 635-200, chapter 10 (emphasis added). In other words, a discharge for the good of the service is requested by the soldier, not prescribed by the Army, and thus is a form of resignation. "Resignations or retirements are presumed to be voluntary." *Tippett v. United States*, 185 F.3d 1250, 1255 (Fed. Cir. 1999). The fact that good of the service resignations are requested while a less pleasant alternative—a court-martial—is pending does not change this presumption. *Sammt*, 780 F.2d at 33 ("To the extent that the civilian pay cases articulate the rationale that a choice of unpleasant alternatives does not make a choice involuntary, that rationale is applicable here."); *see also Moyer*, 190 F.3d at 1319 ("[T]he imposition of a less desirable alternative (mandatory retirement) does not render an otherwise voluntary retirement involuntary.").

     Accordingly, the Court presumes that Plaintiff's decision to request a good of the service discharge was voluntary. Moreover, the Court also presumes that Plaintiff received all of the protections provided by the regulation to ensure that his choice was voluntary. *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) ("In the absence of clear evidence to the contrary, the [presumption of regularity] presumes that public officers have properly discharged their official duties."). These protections include that "[c]ommanders will insure [sic] that a soldier will not be coerced into submitting a request for the good of the Service" and that "[t]he soldier will be given a reasonable time . . . to consult with consulting counsel . . . and to consider the wisdom of submitting such a request for discharge." Army Regulation 635-200, chapter 10. Additionally, only after "receiving counseling" may the soldier "elect to submit a request for discharge for the good of the Service." *Id*. Furthermore, the soldier must "sign a written request, certifying that he or she has been counseled, understands his or her rights, may receive a discharge under other than honorable conditions, and understands the adverse nature of such a discharge and the possible consequences." *Id*. What is more, in that written request, the soldier must specifically state that he or she understands that if the discharge is under other than honorable conditions, one of the consequences is that "I shall be deprived of many or all Army benefits." *Id*. Plaintiff did not attempt to rebut or even argue that he did not receive these procedural protections. *See* Gov't's Mot. to Dismiss at 4-5 (explaining all of the procedural protections Plaintiff received before being permitted to request a discharge for the good of the service).

5

Although the Court presumes that Plaintiff's good of the service discharge was voluntary, the Court does have jurisdiction to determine whether a servicemember's resignation or retirement was in fact voluntary. However, "[t]o be entitled to a hearing on a claim of involuntariness, a plaintiff must make a threshold non-frivolous allegation that his discharge was involuntary." *Tippett*, 185 F.3d at 1255 (citing cases). "If the plaintiff alleges facts that would make out a prima facie case of involuntariness if proven, then he is entitled to a hearing on the voluntariness issue." *Id*. (citing *Dumas v. Merit Sys. Protection Bd*., 789 F.2d 892, 894 (Fed. Cir. 1986)). In other words, "the plaintiff bears the burden of coming forward with evidence to demonstrate that his resignation or retirement was not voluntary." *Carmichael v. United States*, 298 F.3d 1367, 1372 (Fed. Cir. 2002).

Plaintiff, however, made no allegations claiming his discharge was involuntary. In fact, he has done nothing to allege, much less demonstrate, that his resignation was the product of duress. Plaintiff makes no attempt to show: (1) that he involuntarily accepted the Army's resignation terms; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of the Army's coercive acts. *Christie v. United States*, 207 Ct. Cl. 333, 338 (1975) (citing *Fruhauf Southwest Garment Co. v. United States*, 126 Ct. Cl. 51, 62 (1953)). Rather, Plaintiff appears to take no issue with the voluntariness of his discharge. His argument rests instead on his claim that the Army should have discharged him prior to his request for a voluntary dismissal for the good of the service because he was diagnosed in May 1983 with a duodenal ulcer (for which he was treated and returned to duty).

Although Plaintiff takes no issue with the voluntariness of his discharge, had he claimed that his discharge was involuntary he would have had difficulty meeting the elements of the duress test. This is because it is clear that Plaintiff had a choice. He could have stood pat and fought the allegations against him at a trial by court martial. As the Court of Claims observed regarding a servicemember's choice to retire rather than challenge her discharge for cause:

> [w]hile it is possible plaintiff, herself, perceived no viable alternative but to tender her resignation, the record evidence supports [the Civil Service Commission] finding that plaintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. *The fact remains, plaintiff had a choice. She could stand pat and fight. She chose not to*.

*Id*. (emphasis added). The same is true of Plaintiff. Plaintiff was presented with a choice: allow the Army to proceed with the court martial against him and prove its case or apply for a discharge for the good of the service. Plaintiff voluntarily chose the latter course and was discharged. Plaintiff does not now have the option of ignoring that choice and seeking an avenue of relief in this Court that he himself gave up by choosing to be voluntarily discharged. *Moyer*, 190 F.3d at 1319 ("*Sammt* and cases following it are based on the common-sense notion that one who voluntarily gives up any right to compensation and benefits cannot later claim entitlement to such.").

In addition, it is clear that Plaintiff's request for a discharge for the good of the service, in conjunction with the fact that his resulting discharge was under other than honorable conditions, ended his entitlement to disability benefits. First, a discharge for the good of the service takes

6

precedence over a medical discharge, requiring the servicemember requesting such a discharge to forfeit any right to a medical discharge in order to avoid a court martial. Second, a specific consequence of being discharged under other than honorable conditions is the loss of Army benefits. Army Regulation 635-200. As is discussed above, Plaintiff accepted the risk that he would most likely be discharged under other than honorable conditions when he requested to be discharged for the good of the service. Thus, his voluntary discharge was the direct cause of his loss of disability benefits.

Accordingly, the jurisdictional bar set forth in *Sammt* applies here, and Plaintiff's complaint must be dismissed.

### 2. Statute of Limitations

Because Plaintiff's complaint was brought over thirty years after his claims accrued, even if his complaint was not covered by the *Sammt* jurisdictional bar, his claim would still nonetheless fall outside the scope of this Court's jurisdiction. *See John R. Sand & Gravel Co.*, 552 U.S. 130 (holding that the six-year statute of limitations set forth in 28 U.S.C. § 2501 is jurisdictional). For purposes of the Tucker Act, a claim "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003). In cases in which a Tucker Act claim is premised on a wrongful discharge from the military, the general rule is that the claim "accrues upon the service member's discharge rather than upon the final decision of the appropriate military corrections board." *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (citing *Martinez*, 333 F.3d 1295). However, in cases in which the military discharge claim is based on entitlement to disability retirement pay, the claim generally does not "accrue until the appropriate military board either finally denies such a claim or refuses to hear it."[3] *Id*. at 1224 (citing *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990)).

This general rule of accrual for disability retirement claims is not without exceptions. For instance, and most pertinent to this case, the statute of limitations on a disability retirement claim may begin to run "when the service member has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of his discharge." *Id*. at 1226 (citing *Real,* 906 F.2d at 1560). The inquiry then, under *Real* and *Chambers*, is whether Plaintiff sufficiently knew at the time of his discharge that he was suffering from a permanent disability that was service-connected and not the result of his intentional misconduct. Unfortunately for Plaintiff, the record before the Court clearly establishes that he had such knowledge. Therefore, his claim for disability retirement pay began to accrue upon his discharge from the Army in 1986.

Plaintiff readily admits to the Court that he had full knowledge of his specific medical disability prior to his discharge on November 10, 1986. In his complaint, he states that he was diagnosed with and hospitalized for a duodenal ulcer in 1983. Compl ¶ 1. In addition, Plaintiff provided the Court with multiple medical records documenting his duodenal ulcer from that year.

---

[3] In fact, unless an exception applies, "the Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance." *Chambers*, 417 F.3d at 1225.

Compl. at Ex. C.  Indeed, Plaintiff not only admits that he had knowledge of his disability at the time, but he also admits and asserts that the Army did as well.  In other words, rather than arguing that he was unaware of a latent condition, Plaintiff's entire argument is premised on his and the Army's knowledge of his ulcer dating back three years before his discharge.  While this argument may have stated a claim within this Court's jurisdiction had Plaintiff brought it within six years of his discharge,[4] it is jurisdictionally fatal to his complaint when raised now.

Because Plaintiff himself has established to the Court that he had "sufficient actual or constructive notice of his disability" at the time of his discharge, *Chambers*, 417 F.3d at 1226, the Court must apply the *Real/Chambers* exception, thereby starting the statute of limitations clock on Plaintiff's disability claim on the date of his discharge in 1986, not when the ABCMR denied his claim in 2010.  Accordingly, in addition to the *Sammt* jurisdictional bar discussed above, the Court must dismiss Plaintiff's disability pay claim because it became time-barred in 1992.  Thus, this Court lacks subject matter jurisdiction.

## CONCLUSION

For the forgoing reasons, this case is **DISMISSED** for lack of subject matter jurisdiction.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**


                                                   s/ Zachary N. Somers
                                                   ZACHARY N. SOMERS
                                                   Judge

---

[4] Because the Court does not have jurisdiction over Plaintiff's complaint, it does not need to address the government's motion for judgment on the administrative record.  However, if the Court did have jurisdiction over the complaint, it is highly likely that the government's motion would have been granted.  In short, Plaintiff's claim appears to be based on a misreading of the relevant Army regulations.  Plaintiff argues that he should have been referred to the MEB and then discharged as early as 1983 because he was diagnosed with a duodenal ulcer.  However, while a duodenal ulcer *could* have resulted in referral to the MEB and ultimately a discharge, MEB referral and discharge are not the automatic result of a duodenal ulcer diagnosis.  Rather, the relevant regulation in effect at the time did not automatically entitle Plaintiff to MEB review because he did not satisfy the repeated hospitalization or "sick in quarter" requirement.  Army Regulation 40-501.  The Administrative Record and the exhibits attached to Plaintiff's complaint establish that Plaintiff was treated for his condition, prescribed over-the-counter medication, returned to duty, and continued on duty for an additional three years before running into the legal problems that ultimately led to his voluntary discharge.  As the ABCMR pointed out in its review of Plaintiff's application to have his record corrected, "the mere presence of an impairment does not, of itself, justify a finding of unfitness because of physical disability."  AR 35.