# In the United States Court of Federal Claims

No. 16-141 C
(Filed: September 12, 2023)

```
* * * * * * * * * * * * * * * * *  *
                                    *
JOSEPH D. REAVES,                   *
                                    *
                    Plaintiff,      *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
                    Defendant.      *
                                    *
* * * * * * * * * * * * * * * * *  *
```

*Joseph Blake Fellows*, of Mobile, Alabama, for Plaintiff.

*Mariana Teresa Acevedo*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant, and *Major Alane E. Ballweg*, Litigation Attorney, U.S. Army Legal Services Agency, of Washington, D.C., of counsel.

## MEMORANDUM OPINION AND ORDER

**SOMERS**, Judge.

Pending before the Court in this disability military pay claim is Plaintiff's motion for sanctions against the government for spoliation of medical records that were apparently lost in 1983. For the reasons explained below, Plaintiff's motion is denied.

### BACKGROUND

On August 17, 2022, Plaintiff Joseph D. Reaves filed a motion for sanctions, claiming that the government "destroyed" his Personal Reliability Program health records (PRP HRECs) "in order to hide its own regulatory violations." ECF No. 113 ("Motion") at 4. The health records at issue were checked out to Plaintiff in May 1983. AR at 174–75; ECF No. 45 at 8; ECF No. 42 at 14. The cover of the health records was found later that year "torn and destroyed" in downtown Augsburg, Germany. AR 174–75. According to a Standard Form 600 included in the administrative record, Plaintiff's medical records were "checked out from the [troop medical clinic]" in May 1983 and records "indicate it was never returned." *Id.* The government claims that the records were "never returned to Army control" after Plaintiff checked the records out in May 1983. ECF No. 114 at 5 (Response). Plaintiff, however, contends that he "returned [the]

PRP HREC's in late May 1983" and that "[s]omeone with authorization to checkout these PRP HREC's extracted them from [a] highly secured facility."  ECF No. 45 at 8; ECF No. 42 at 14.

Plaintiff argues that "because his medical records were destroyed by Defendant, Plaintiff was erroneously denied disability retirement" and "sentenced to 22 to 90 years in the Pennsylvania Department of Corrections, of which he served 27 years in prison."  Motion at 15.  Plaintiff posits that "the records were destroyed with a culpable state of mind," *id.* at 4, and, therefore, "requests that this Court sanction Defendants for the spoliation of material evidence and award him any and all relief the Court deems appropriate and to deter Defendants from further acts of spoliation."  *Id.* at 15.  As part of that request, Plaintiff specifically asks the Court to make an adverse inference finding against the government and award Plaintiff $78,000,000 "to compensate him for 39 years of harm (27 of which he spent in Prison) which was directly caused by the Defendant's spoliation."  *See id.* at 11–12, 16.

## DISCUSSION

### A. Legal Standard

"Spoliation occurs when a party destroys or materially alters relevant evidence that it had a duty to preserve."  *4DD Holdings, LLC v. United States*, 143 Fed. Cl. 118, 130 (2019) (citing *United Med. Supply Co., Inc. v. United States*, 77 Fed. Cl. 257, 268 (2007)).  A party has a duty to preserve information in instances in which the party "knows or reasonably should know that evidence in its control may be relevant to a reasonably foreseeable legal action."  *Jones v. United States*, No. 2020-2182, 2022 WL 473032, at *4 (Fed. Cir. Feb. 16, 2022).  The Court may impose sanctions for spoliation pursuant to either Rule 37 of the Rules of the United States Court of Federal Claims (RCFC), or the Court's inherent powers.  *See, e.g.*, *United Med. Supply Co., Inc.*, 77 Fed. Cl. at 264; *4DD Holdings, LLC*, 143 Fed. Cl. at 130.

Regarding the first path for spoliation sanctions, "RCFC 37 provides an arsenal of discovery sanctions designed to discourage delay, waste of resources, and dilatory practices in favor of full disclosure of relevant information prior to trial."  *Applegate v. United States*, 35 Fed. Cl. 47, 56 (1996).  Under RCFC 37 or pursuant to its inherent authority, the Court "may impose a variety of sanctions, including those specifically enumerated under RCFC 37(b)(2), among which are orders: (i) precluding the introduction of evidence or establishing facts; (ii) dismissing the action or parts thereof; or (iii) entering a default judgment."  *United Med. Supply Co.*, 77 Fed. Cl. at 267.  The Court may impose sanctions under RCFC 37 when "the spoliation violates a specific court order or disrupts the court's discovery regime . . . ."  *Id.* at 264.  In other words, RCFC 37 "does not apply before the discovery regime is triggered"; therefore, RCFC 37 sanctions are not available "before the issuance of a discovery request."  *Id.* at 268.  Additionally, "neither RCFC 37(b) nor RCFC 37(d) requires a showing of bad faith as a precondition to the imposition of sanctions.  Instead, they require only that the sanctions imposed be 'just.'"  *Id.* at 267.

Alternatively, the Court may impose spoliation sanctions "based on the court's inherent power to control the judicial process and litigation, a power that is necessary to redress conduct 'which abuses the judicial process.'"  *Id.* at 263 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, (1991)).  Like RCFC 37, "an injured party need not demonstrate bad faith in order for the

court to impose, under its inherent authority, spoliation sanctions." *Id*. at 268. However, the Court "must exercise this inherent power with great 'restraint and discretion.'" *Advanced Powder Sols., Inc. v. United States*, 160 Fed. Cl. 575, 579 (2022), *reconsideration denied*, No. 20-137C, 2022 WL 2720193 (Fed. Cl. July 13, 2022) (quoting *Chambers*, 501 U.S. at 44); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764, (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.").

Whether imposing sanctions pursuant to either RCFC 37 or its inherent authority, the Court adopts a balancing test and

> must construct a sanction that is just and proportionate in light of the circumstances underlying the failure to preserve relevant evidence, as well as the punitive, prophylactic, remedial and institutional purposes to be served by such sanctions. When considering the most powerful of the available sanctions, particularly those that might lead to a determination other than on the merits, the court must use an additional measure of restraint, which ordinarily requires that the offending party's conduct evinces serious fault, willfulness or bad faith. The court must also consider what ill effect—if any—the challenged conduct has had on the course of the litigation and on the integrity of the fact-finding processes.

*United Med. Supply Co.*, 77 Fed. Cl. at 270.

**B. Analysis**

In Plaintiff's motion for sanctions, he does not concretely reference whether he is seeking sanctions under RCFC 37 or the Court's inherent sanctions power. Rather, Plaintiff simply refers the Court to his previous "Motions and Requests for Court Order to compel the Defendant to produce the PRP HREC's under the proper RCFC 37." Motion at 6.[1] In those previous "Motions and Requests," Plaintiff asked the Court to compel the government "to produce documents as identified in the Administrative Record as Health Records of the Plaintiff dated October 6, 1981 to November 7, 1983." ECF No. 69 at 1. Plaintiff also requested that the Court sanction the government "for the [d]eliberate spoliation of two years of PRP HREC's that [were] evidence toward Disability benefits for the Army, Veterans[] Affairs and Social Security Administration as stated in AR 645-40 and 40-501." ECF No. 45 at 12. With regard to the Court's inherent sanctions authority, Plaintiff does not discuss that authority in his motion for sanctions, and he only refers to it once in his previous "Motions and Requests" in a one-sentence parenthetical: "Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation." ECF No. 42 at 16; ECF No. 45 at 10. Although Plaintiff fails to address fully in his motion the different authorities by which the Court may impose sanctions, he specifically asks the Court to (1) make an adverse inference finding against the government, and (2) award him $78,000,000 "to compensate . . . for 39 years of harm (27 of which he spent in Prison) which was directly caused by the Defendant's spoliation." Motion at 11–12, 16.

---

[1] The motion for sanctions that is the subject of this opinion was filed by Plaintiff as a represented party, whereas the referenced "Motions and Requests" were previously filed by Plaintiff *pro se*.

Before addressing the merits of the two sanctions requested by Plaintiff, the Court must first address whether Plaintiff has established that spoliation actually occurred. Recall that for spoliation to have occurred, a party must have destroyed or materially altered the evidence in question and the party must have had a duty to preserve that evidence. *4DD Holdings*, 143 Fed. at 130. As explained below, Plaintiff has not shown that the Army had control of the evidence such that the Army could have destroyed or altered it, that the Army actually destroyed or altered it, or that the Army had a duty to preserve the evidence in question. First, as discussed earlier, the health records at issue have not been accounted for since May 1983, when Plaintiff checked the records out from the troop medical clinic. *See* AR 174–75. Although the administrative record indicates that the cover for Plaintiff's medical records was found "torn and destroyed" in downtown Augsburg, Germany later that year, *see id.*, Plaintiff offers no evidence that the records were in the Army's possession at the time they went missing. In fact, according to a Standard Form 600 included in the administrative record, the health records were checked out to Plaintiff in May 1983 and never returned. *See id.* On that form, the following was documented:

> In May 1983 the medical record of this [service member] was checked out from the [troop medical clinic] and records here indicate it was never returned. The torn and destroyed cover was found in downtown Augsburg. The [service member] denies any knowledge of how his medical records were lost and destroyed. He states he returned them to the [troop medical clinic] late in May 1983.

*Id.* While Plaintiff asserts that he returned the records to the clinic in late May 1983, there is no documentation of that in the administrative record, and Plaintiff does not offer any other evidence that the government possessed the records after he checked them out, or that the government is responsible for the records' loss or destruction. Rather, Plaintiff simply argues that because he claims to have returned the records in late May 1983 and the records no longer exists, the government must have destroyed the records. *See* Motion at 2–3. This argument, however, is completely unsupported by anything other than conjecture.

In an attempt to get around the fact that Plaintiff has no evidence to show that it was the Army, and not Plaintiff, that had possession of the records when they went missing, Plaintiff asserts that when he checked his medical records out in May 1983, the Army should have provided him with a copy of his records, not the originals. Motion at 12. To support this assertion, Plaintiff cites to Army Regulation 40-66, paragraph 1-6(b), which states that "[u]pon request, the patient may be provided with a copy of his or her record, but not the original record." *Id.* Therefore, according to Plaintiff, when he checked the medical records out in May 1983, the Army had a regulatory duty to provide him with a copy of the records, and, because the Army provided him with the original records, the Army breached that duty and should now be sanctioned or "punished as a court martial may direct" for the ultimate loss of the medical records. *See id.*

This argument fails for at least two reasons. First, it does not address the criteria required to prove spoliation, *i.e.*, the government's litigation-related duty to preserve a record when it "knows or reasonably should know that evidence in its control may be relevant to a reasonably foreseeable legal action." *See Jones*, 2022 WL 473032, at *4 (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). In fact, Plaintiff offers no argument as to

4

why the government knew or should have been aware that the missing medical records may have been relevant to a reasonably foreseeable legal action. Rather, Plaintiff only raises the government's alleged *regulatory* duty to provide a copy of the records (rather than the originals) to Plaintiff, the overall merits of Plaintiff's case, and how these missing records would have been helpful to Plaintiff in this action and his state court criminal trial. Thus, the Court is left to guess exactly how the Army, in 1983, could have reasonably foreseen this or some other legal action for which these particular medical records would have been relevant. It is not the Court's duty, however, to engage in speculation regarding arguments that Plaintiff (now represented by counsel) did not make.

Second, even to the extent a regulatory duty to preserve a record creates a duty for purposes of spoliation, the regulatory duty in question did not exist at the time Plaintiff checked out his medical records in May 1983. *See, e.g.*, Army Regulation 40-66, *Medical Record and Quality Assurance Administration* ¶ 5-2, 5-8(3), and 6-4 (Dept. of Army Dec. 1, 1982). In other words, even if the current version of Army Regulation 40-66 creates a duty not to provide the original record, that regulation created no such duty in 1983 and Plaintiff has not pointed the Court toward any regulation that did create such a duty. Moreover, in 1983, and continuing to present day, Army regulations permit soldiers to hand-carry their medical records in certain situations. *See, e.g.*, *id*.; Army Regulation 40-66, Medical Record Administration and Healthcare Documentation ¶ 5-26-29 (Dept. of Army Jun. 17, 2008). Therefore, contrary to Plaintiff's assertion, Army regulations actually affirmatively permitted the Army to give Plaintiff his *original* medical records to hand-carry from one treatment facility to another. In other words, in 1983, the Army did not have the regulatory obligation cited by Plaintiff to have only provided Plaintiff with a copy of his medical records, and Army regulations actually permitted (and still permit) the hand-carrying of medical records by a soldier in certain circumstances. Accordingly, Plaintiff has failed to demonstrate that spoliation occurred here because he has not proved that the Army either destroyed or altered his medical records or that the Army had a duty to preserve those records.

What is more, even if the government had spoliated the medical records at issue, Plaintiff has failed to meet his burden to show that he is entitled to either of the two requested sanctions. Plaintiff first requests that the Court draw an adverse inference against the government for its alleged spoliation. Motion at 11–12. "An 'adverse inference' is a remedy for spoliation, whereby the Court 'may infer that the destroyed evidence would have been favorable to the opposing side.'" *Advanced Powder Sols., Inc.*, 160 Fed. Cl. at 580 (quoting *United Med. Supply Co.*, 77 Fed. Cl. at 263); *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. N.L.R.B.*, 459 F.2d 1329, 1336 (D.C. Cir. 1972) ("[T]he [adverse inference] rule provides that when a party has relevant evidence within [its] control which [it] fails to produce, that failure gives rise to an inference that the evidence is unfavorable to [it]."). The Federal Circuit has held that an adverse inference is appropriate in cases in which

> evidence has been destroyed and "(1) . . . the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) . . . the records were destroyed with a culpable state of mind; and (3) . . . the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

5

*Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). The party seeking to use the destroyed evidence bears the burden of proving each of the three criteria. *See id.* at 1375. In that same vein, "[t]he party seeking an adverse inference has the burden of establishing that spoliation has occurred," *Chapman L. Firm v. United States*, 113 Fed. Cl. 555, 610 (2013), *aff'd*, 583 F. App'x 915 (Fed. Cir. 2014) (citing *K-Con Bldg. Sys., Inc. v. United States*, 106 Fed. Cl. 652, 666 (2012)), and "must . . . 'come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been,'" *Micron Tech., Inc.*, 645 F.3d at 1328 (second alteration in original) (emphasis omitted) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 80 (3d Cir. 1994)).

In this case, even if spoliation had occurred, and thus the first *Jandreau* criteria was met, the Court would still have to deny Plaintiff's request for an adverse inference sanction because Plaintiff fails to prove the remaining two adverse inference criteria established in *Jandreau*.[2] First, even if the government was in control of the health records at the time they were allegedly destroyed, Plaintiff fails to establish the second criteria for an adverse inference: that the government destroyed the records with "a culpable state of mind." *Jandreau*, 492 F.3d at 1375. Plaintiff asserts that "[t]he evidence to demonstrate that 'the records were destroyed with a culpable state of mind'" are (1) "[t]he torn and destroyed cover was found in downtown Augsburg"; (2) "[t]he [Army Medical Department] did not have authorization under the provisions of AR 40-66, 3-7, destruction of unidentifiable medical documents, to destroy S.M. Reaves' HRECs"; and (3) "SF 600. 9 Nov. 1983 (AR 00000) clearly identified S.M. Reaves as the member whose torn cover was found in downtown Augsburg, Germany. . . . Dereliction of duty by the custodians of the HRECs entails neglect under UCMJ and is the mens rea element of deliberate intent, malice, wrongdoing. UCMJ states that destroying military property entails neglect and willful act." Motion at 4. In other words, Plaintiff argues that the government willfully destroyed the records based on the simple facts that the torn cover of his records was found, that the Army Medical Department did not have authority to destroy the records, and the Army no longer has possession of the records. As a result, Plaintiff contends that there is an automatic implication of a culpable mind. *See id.* But Plaintiff offers no actual evidence that the Army destroyed the records or that the Army did so willingly or recklessly. *See id.* Thus, Plaintiff's entire argument in support of the government's culpability essentially rests on the fact that the cover of the records was found in Augsburg and the contention that the Army did not have the authority to destroy the medical records. This illogical jump to Plaintiff's preferred conclusion is insufficient to meet his burden.

Plaintiff also attempts to meet his burden by arguing that the Army willfully destroyed the health records "in order to hide its own regulatory violations," to hide evidence of Plaintiff's diagnosed mental and physical illnesses "that should have required [Plaintiff] to go to a Medical

---

[2] The Court also declines to impose sanctions pursuant to RCFC 37 as it does not find that spoliation occurred, and even if spoliation did occur, that spoliation did not violate a discovery order or disrupt any element of discovery in this case, which will almost certainly eventually be decided based on the administrative record. *See United Med. Supply Co.*, 77 Fed. Cl. at 267. Although Plaintiff did make a "discovery request," *see* ECF No. 69, that request was made for the medical records at issue after it was clear that the records were missing.

Examination Board for both his ulcer and his schizophrenia," and to "deprive[] [Plaintiff] from receiving [a] disability compensation rating of 100% from 1983 to the present with the Army, VA, and Social Security." *Id.* at 4–5. However, once again, Plaintiff fails to offer any evidence to support this claim. Moreover, the Army continued to maintain medical records for Plaintiff for the three subsequent years of his service after the records at issue went missing. *See, e.g.*, AR 97–99, 101–02, 105–06, 116, 119, 204–08. These subsequent health records clearly establish that Plaintiff was diagnosed with an ulcer and treated for ulcer symptoms, indicating that the government lacked a motive to hide Plaintiff's ulcer diagnosis by destroying his earlier medical records. AR 36, 97–119, 156–76, 185–230. And with regard to Plaintiff's claim that the records contained a schizophrenia diagnosis, the Court will never know whether that is in fact the case, but subsequent medical records do document that Plaintiff underwent a Mental Status Evaluation and indicate that he "me[t] the [Army's] retention requirements." AR 433.[3] Furthermore, the missing medical records are not preventing Plaintiff from receiving the disability compensation he seeks; rather, by separate order, the Court remanded Plaintiff's claim to the Army so it may consider Plaintiff's mental illness-related disability claim based on medical records from the Veterans Administration. *See* ECF No. 128. All of this undermines Plaintiff's argument that the government willfully destroyed the missing medical records to prevent him from obtaining disability benefits.

Additionally, Plaintiff fails to demonstrate the third and final criteria for an adverse inference sanction: that the missing medical records are "relevant to [his] claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Jandreau*, 492 F.3d at 1375. Plaintiff argues that the missing records had evidence of his ulcer and schizophrenia diagnoses and treatments, and "[t]he destruction of [the records] deprives [Plaintiff] from receiving disability compensation rating of 100% from 1983 to the present with the Army, VA, and Social Security." Motion at 5. However, subsequent records still document that Plaintiff was diagnosed with an ulcer in 1983, *see* AR 414, indicating that Plaintiff's present military pay claim was not prejudiced by the loss of the record, at least in regard to Plaintiff's ulcer diagnosis and treatment. Moreover, as to Plaintiff's claim that the missing records document a schizophrenia diagnosis, even if that is what the records did in fact show, Plaintiff has not demonstrated that the destruction of such a record would prejudice his *current* case. Indeed, as the Court noted in a separate order remanding Plaintiff's mental illness claim back to the ABCMR for consideration, Plaintiff's mental illness based disability claim never appears to have been considered by the ABCMR, *see* ECF No. 128 at 2; therefore, it is not possible for prejudice to exist on a claim that has never actually been considered by the corrections board. *Id.* In addition, a mental illness diagnosis by itself would be insufficient to award Plaintiff the relief he seeks. The medical records would have to further diagnosis the mental illness as being

---

[3] In addition, the government points out that

> Mr. Reaves alleges through his own "lay statements" the missing records contain evidence that Dr. Thomason both diagnosed him with and treated him for schizophrenia. Pl.'s Mot. for Sanctions at 7. It is highly unlikely that Dr. Thomason, the physician who treated him for a stomach ulcer, was also psychiatrically trained and qualified to make such a diagnosis and provide psychiatric treatment.

Motion at 7, n.3.

7

service-related in order for Plaintiff to be entitled to the disability retirement he seeks. Plaintiff's Veterans Administration mental illness diagnosis discussed in the Court's remand order would appear to be much more beneficial to Plaintiff's case than the schizophrenia diagnosis that allegedly appears in the missing medical records.

Moreover, even if Plaintiff's failure to meet any of the criteria for an adverse inference was not enough, Plaintiff also fails to explain what adverse inference he wants the Court to make. Instead, Plaintiff simply states that "[a]n adverse inference instruction is an appropriate sanction" and asks the Court to "enter a default judgment against the defendant." Motion at 11, 16. However, as pointed out above, even an adverse inference that Plaintiff's missing medical records would show that he was diagnosed with schizophrenia would not be enough to entitle Plaintiff to relief, let alone a sanction as severe as a default judgment against the government. *See Chambers*, 501 U.S. at 44–45 (warning that "inherent powers must be exercised with restraint and discretion," and characterizing "outright dismissal of a lawsuit" as "a particularly severe sanction"). For all of the foregoing reasons, the Court denies Plaintiff's request for an adverse inference spoliation sanction.

Finally, Plaintiff claims that

> [b]ecause the Defendants' destroyed his HREC's, [Plaintiff] was also unable to use them in his defense for a crime in Pennsylvania in 1987 for which he served 27 years in prison. The HREC's would have allowed [Plaintiff] to plea[d] insanity and use his HREC's as a mitigating factor during sentencing. Because the Defendant destroyed his HREC's, [Plaintiff] was convicted of a crime and sentenced to 22-90 years, of which he served 27 years in prison.

Motion at 6. Therefore, as a spoliation sanction, Plaintiff requests that the Court award him "$78,000,000.00 to compensate him for 39 years of harm (27 of which he spent in Prison) which was directly caused by the Defendant's spoliation." *Id.* at 16.

However, Plaintiff's claim before this Court is a claim for military disability retirement pay, which is completely unrelated to his criminal case. Spoliation, of course, "'is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence *in pending or reasonably foreseeable litigation*.'" *Micron Tech., Inc.*, 645 F.3d at 1320 (emphasis added) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Plaintiff makes no claim, however, as to how the Army could have reasonably foreseen Plaintiff's felony criminal trial. And how could he? His argument that the missing medical records prejudiced him in his criminal case is irrelevant to the case before this Court. It appears that Plaintiff's request for monetary spoliation sanctions is a thinly veiled attempt to bring a tort claim against the United States through a spoliation motion. The Court will not, and cannot, entertain Plaintiff's tort claim masquerading as a request for sanctions. *See* 28 U.S.C. § 1491(a)(1) (Under the Tucker Act, this Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."). Simply put, a multimillion-

dollar claim related to Plaintiff's state court criminal conviction is not properly before this Court, as a spoliation sanction or otherwise.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Plaintiff's motion for sanctions. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Zachary N. Somers<br>
ZACHARY N. SOMERS<br>
Judge